# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CAROLYN SEBERIG,**

    **Plaintiff,**

v.                                         Civil Action 2:20-cv-2011
                                             Magistrate Judge Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff Carolyn Seberig filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 4, 5). For the reasons that follow, the Court **REVERSES** the Commissioner's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.  BACKGROUND**

    **A.  Prior Proceedings**

Plaintiff protectively filed her application for SSI on June 1, 2016, alleging disability beginning on May 15, 2014. (Doc. 10, Tr. 399–404). Her application was denied initially and again on reconsideration. After a video hearing on September 6, 2018 (Tr. 216–77), Administrative Law Judge Jessica Inouye ("ALJ") issued an unfavorable decision on February 27, 2019. (Tr. 153–76). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (Tr. 1–6).

Plaintiff filed this action on April 21, 2020 (Doc. 1), and the Commissioner filed the administrative record on August 18, 2020 (Doc. 10). This matter is ripe for review. (*See* Docs. 13, 15).

### B. Relevant Medical Background

Because the Undersigned's analysis concerns only Plaintiff's physical impairments, the Undersigned limits her discussion of the record to the same. The ALJ summarized the relevant medical evidence:

> [ ] The claimant reported pain and stiffness. (Ex. B5F, p.6; Ex. B7F, p.21; Ex. B9F, p.4; Ex. B11F, p.11; Ex. B14F, p.2; Ex. B15F, p.4; Ex. B21F, p.2). However, the claimant did not have an inability to ambulate effectively. The claimant generally had normal gait. (Ex. B1F, p.4; Ex. B3F, p.7; Ex. B7F, p.4; Ex. B8F, p.5; Ex. B9F, p.4; Ex. Bl5F, p.14; Ex. B16F, p.7; Ex. B19F, p.8; Ex. B22F, p.6; Ex. B23F, p.5; Ex. B29F, p.15; Ex. B31F, p.5). She reported a general ability to drive, shop, and perform activities of daily living. (Ex. B8F, p. 7). [ ]
>
> [ ] The claimant underwent imaging that showed degenerative disc disease. (Ex. B9F, p.7; Ex. B21F, p.6). The claimant had examinations with both normal range of motion and limited flexion and extension, and pain with motion. (Ex. Bl5F, p.4 and 9; Ex. B23F, p.5; Ex. B31F, p.5). The claimant generally had intact superficial touch and pain sensation. (Ex. B3F, p.7). However, the claimant did not have an inability to ambulate effectively. The claimant generally had normal gait. (Ex. B1lF, p.4; Ex. B3F, p.7; Ex. B7F, p.4; Ex. B8F, p.5; Ex. B9F, p.4; Ex. Bl5F, p.14; Ex. Bl6F, p.7; Ex. Bl9F, p.8; Ex. B22F, p.6; Ex. B23F, p.5; Ex. B29F, p.15; Ex. B31F, p.5). [ ]

(Tr. 160–61).

> Regarding the claimant's degenerative disc disease, chronic pain syndrome, trochanteric bursitis of the left hip, and myofascial pain, the claimant reported pain and stiffness. (Ex. B5F, p.6; Ex. B7F, p.21; Ex. B9F, p.4; Ex. B11F, p.11; Ex. Bl4F, p.2; Ex. Bl5F, p.4; Ex. B21F, p.2). On September 13, 2016, the claimant underwent imaging of the hip that showed no acute fracture. (Ex. B9F, p.13). On November 9, 2016, the claimant underwent imaging that showed disc degeneration and bilateral facet osteoarthritis at L4-5; and grade 1 anterolisthesis of L4 on L5, probably degenerative. (Ex. B9F, p.7). On February 21, 2017, the claimant underwent imaging that showed moderate to severe facet degeneration and associate grade 1 anterolisthesis of L4, foraminal narrowing/deformity, and a left paracentral disc

2

protrusion; mild degenerative changes elsewhere; and no canal stenosis. (Ex. B21F, p.6). She reported that she could not complete physical therapy. (Ex. Bl3F, p.13). The claimant received injections. (Ex. B23F, p.29).

Besides these impairments, the claimant also demonstrated evidence of obesity. Obesity is defined in SSR 02-lp as a complex, chronic disease characterized by excessive accumulation of body fat. A body mass index (BMI) of 30 or greater falls within the obesity category. The claimant had a BMI over 30 in the evidence of record. (Ex. B2F, p.4).

(Tr. 163).

### C. Relevant Hearing Testimony

In addition to the evidence above, the ALJ summarized Plaintiff's hearing testimony:

The claimant reported a five to ten-minute tolerance to standing, and an avoidance in standing and walking for activities of daily living. (Ex. B11F, p. l). She testified that she must elevate her legs when sitting to take the pressure off her legs and back. The claimant stated that she had pain when walking. (Hearing Testimony).

(*Id.*).

### D. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease, chronic pain syndrome, trochanteric bursitis of the left hip and myofascial pain, and bipolar and affective disorders. (Tr. 159). The ALJ held, however, that none of Plaintiff's impairments, either singly or in combination, meet or medically equals a listed impairment. (Tr. 160).

As for Plaintiff's RFC, the ALJ found:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes, and scaffolds; occasionally climb ramps, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards, unprotected heights, and moving dangerous machinery; learn, understand, remember, and carry out simple work instructions; never work with the general public; have occasional brief superficial work with

3

>coworkers, never perform teamwork or tandem work, and not be in an intense work environment with over the shoulder supervision or a high paced work environment; tolerate occasional changes in work tasks in a routine work environment; and sustain concentration, persistence, and pace in two hour increments throughout the typical workday.

(Tr. 162–63). The ALJ also found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 165).

The ALJ then turned to the relevant opinion evidence. Regarding the opinion of Plaintiff's treating physician, Dr. Stephen Bushek, whom the ALJ mistakenly refers to as Dr. "Bushnell," the ALJ found:

>This opinion is given reduced weight. Although Dr. Bushnell was a treating source, this opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or consistent with the other substantial evidence. Dr. Bushnell did not provide specific evidence to support the opinion that the claimant could rarely maintain regular attendance and be punctual within customary tolerance. (Ex. B10F, p.3). The evidence of record reflected that the claimant had improvement with treatment in both her physical and mental impairments. (Ex. B26F, p.6; Ex. B31F, p.23). Further, the evidence of record did not fully support the exertional limitations as stated by Dr. Bushnell. (Ex. B10F, p.32). Although the claimant had exertional limitations, on May 22, 2018, the claimant reported she could complete walking, housework, shopping, and sleeping up to six hours. She reported up to fifty percent pain relief with medication. (Ex. B23F, p.5). On May 23, 2018, the claimant reported independently completing activities of daily living and exercising regularly. (Ex. B26F, p.4). On May 31, 2018, the claimant was ambulatory, and reportedly walked without restrictions. (Ex. B25F, p. 7). Although Dr. Bushnell opined the claimant needed to elevate her legs forty-five degrees at will, and the claimant testified that she needed to elevate her legs, the claimant reported significant and meaningful improvement in chronic pain symptoms and quality of life with opioid therapy. (Ex. B31F, p.23). Additionally, the evidence of record did not support the need for additional unscheduled rest periods during an eight-hour workday. The claimant generally had normal gait. (Ex. B1F, p.4; Ex. B3F, p.7;

4

> Ex. B7F, p.4; Ex. B8F, p.5; Ex. B9F, p.4; Ex. Bl5F, p.14; Ex. B16F, p.7; Ex. B19F, p.8; Ex. B22F, p.6; Ex. B23F, p.5; Ex. B29F, p.15; Ex. B31F, p.5). She reported a general ability to drive, shop, and perform activities of daily living. (Ex. B8F, p. 7).

(Tr. 166–67).

Regarding the opinion of the state agency physician, the ALJ stated:

> As for the opinion evidence, the reconsideration State agency physical opinion was considered. Elizabeth Das, M.D. determined the claimant could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently climb ramps/stairs; occasionally climb ladders/ropes/scaffolds; frequently balance, kneel, and crouch; and occasionally stoop and crawl. (Ex. B3A, p.10). This opinion was given good weight. Dr. Das was a non-examining source. The evidence of record generally supported the exertional limitations as stated. However, the hearing level evidence supported greater limitations in the claimant's ability to climb, balance, kneel, and crouch. Further, the claimant's impairments supported environmental limitations. The claimant reported pain and stiffness. (Ex. BSF, p.6; Ex. B7F, p.21; Ex. B9F, p.4; Ex. B11F, p.11; Ex. Bl4F, p.2; Ex. Bl5F, p.4; Ex. B21F, p.2). She had examinations with both normal range of motion and limited flexion and extension, and pain with motion. (Ex. Bl5F, p.4 and 9; Ex. B23F, p.5; Ex. B31F, p.5). Further, the claimant had evidence of obesity, which further supported limitations in exerting force and lifting weight. (Ex. B2F, p.4).

(Tr. 165).

The ALJ also considered the opinion of the initial state agency physician:

> The initial State agency physical opinion was considered. Mehr Dissiqui, M.D. determined the claimant had no severe physical impairments. (Ex. B1A, p.7). This opinion is given little weight. Dr. Dissiqui was a non-examining source. The evidence of record supported the determination that the claimant had severe physical impairments. She underwent imaging that showed degenerative disc disease. (Ex. B9F, p.7; Ex. B21F, p.6). The claimant reported pain and stiffness. (Ex. BSF, p.6; Ex. B7F, p.21; Ex. B9F, p.4; Ex. B11F, p.11; Ex. Bl4F, p.2; Ex. Bl5F, p.4; Ex. B21F, p.2). Further, the claimant had a BMI over 30 in the evidence of record, further limiting her ability to lift weight and exert force. (Ex. B2F, p.4). . . .

(Tr. 167–68).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, laundry worker, or cleaner/polisher. (Tr. 169). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 1, 2016, the date the application was filed (20 CFR 416.920(g))." (Tr. 170).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts that the ALJ erred in weighing the opinions of her treating physicians, Dr. Stephen Bushek and Dr. Souhair Garas. (Doc. 13 at 16). Plaintiff also contends that the ALJ erred in her analysis of Plaintiff's back pain complaints. (*Id*. at 22).

### A. Treating Physicians

Two related rules govern how the ALJ was required to analyze the opinions of Plaintiff's treating physicians.[1] *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id*. The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (internal quotation marks omitted) (citing 20 C.F.R. § 404.1527(c)(2))

Closely associated is "the good reasons rule," which requires an ALJ to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (alterations in original (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)); *see also* 20 C.F.R. § 404.1527(c)(2); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010). To meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d

---

[1] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules, among other things, significantly changed the standards for evaluating medical opinions. Because the new standards for evaluating medical opinions are effective for claims filed on or after March 27, 2017, they do not apply to this case.

931, 937 (6th Cir. 2011).

The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that her physician has deemed her disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied . . . " *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id*. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified upon the record.'" *Blakely*, 581 F.3d at 407 (alterations in original) (quoting *Rogers*, 486 F.3d at 243). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

As noted, Dr. Bushek completed a November 2016 physical medical source statement. He opined that Plaintiff could occasionally lift ten pounds; stand or walk fifteen minutes without interruption for a total of four hours in an eight-hour workday; rarely climb, crouch, or crawl; needed to elevate her legs forty-five degrees at will; and required additional unscheduled rest periods. (Tr. 773–74).

When considering the opinion of Dr. Bushek, the ALJ stated broadly that, "although Dr. Bushnell was a treating source, this opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or consistent with other substantial evidence." (Tr. 166–67). She also notes that "Dr. Bushnell did not provide specific evidence to support the opinion that the claimant could rarely maintain regular attendance and be punctual within customary tolerance." (*Id*.). As for the exertional limitations on lifting, standing, walking, climbing, crouching, and crawling, the ALJ found that "[t]he evidence of record did not fully support them." (*Id*.).

In rejecting these exertional limitations, the ALJ noted that, "although the claimant had exertional limitations, on May 22, 2018, the claimant reported she could complete walking, housework, shopping, and sleeping up to six hours" and that she "reported up to fifty percent pain relief with medication." (*Id*.). The ALJ further noted that, "[o]n May 23, 2018, the claimant reported independently completing activities of daily living and exercising regularly," and, "[o]n May 31, 2018, the claimant was ambulatory, and reportedly walked without restrictions." (*Id*.). When fashioning the RFC, the ALJ found that Plaintiff can never climb ladders, ropes and scaffolds, but can occasionally climb ramps, balance, stoop kneel, crouch, and crawl. The ALJ did not adopt any limitations on standing or walking. (Tr. 162–63).

Plaintiff asserts that the ALJ improperly discounted Dr. Bushek's suggested exertional limitations and relied too heavily upon her activities of daily living. (Doc. 13 at 17–20). The Court agrees.

As an initial matter, to the extent the ALJ rejected Dr. Bushek's limitations because they were inconsistent with consulting physician opinions or examinations, "because the ALJ

9

considered [Dr. Bushek's] statement as a treating physician opinion," that "is not a good reason to discredit Dr. Bushek's opinion." *Dawes v. Saul*, No. 3:19-CV-00001, 2020 WL 587426, at *5 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, No. 3:19-CV-00001, 2020 WL 906227 (M.D. Tenn. Feb. 25, 2020) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("Surely the conflicting substantial evidence [necessary to discount a treating physician's opinion] must consist of more than the medical opinions of the nontreating and examining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.")).

Moreover, if the ALJ found Dr. Bushek's records inconsistent with his opinion, the ALJ did not say so. Nor do the ALJ's repeated references to Plaintiff being ambulatory and walking without a cane or wheelchair (*see* Tr. 164), without more, does not mean that Plaintiff did not experience pain walking or standing that would have warranted Dr. Bushek's suggested limitations. *See, e.g.*, *Dawes*, 2020 WL 587426, at *6 (finding that "brief examination findings," for example, that plaintiff was able to stand on her heels and toes and to stand on her right or left leg alone without difficulty "do not undermine [treating physician's opinion] that [plaintiff] cannot stand or walk for more than an hour total each per workday").

Indeed, Plaintiff repeatedly reported pain and difficulty standing and walking to Dr. Bushek. For example, on September 12, 2016, Plaintiff reported constant, sharp, and worsening pain in her left hip to upper thigh. (Tr. 735). Plaintiff noted that the pain was aggravated by moving and that she would become stiff when sitting too long but would limp after being on her

10

feet for a while. (*Id*.). Dr. Bushek noted Plaintiff's obesity, mild distress, limping, and favoring the left hip and leg. (*Id*.).

Dr. Bushek saw Plaintiff again on November 9, 2016, for her hip and back pain. (Tr. 725). Overall, the pain was worsening but better with changing position such as lying flat/prone and aggravated by movement/positioning, bending over, twisting, and walking. (Tr. 728). There was pain with flexion of the back. (*Id*.). X-rays of Plaintiff's lumbar spine revealed disc degeneration and bilateral facet osteoarthristis at L4-5 and grade 1 anteriorlisthesis of L4 on L5, probably degenerative. (Tr. 731). On January 18, 2017, Plaintiff reported to Dr. Bushek that she had low back pain radiating to the buttocks and shooting to both hips, that the pain was sharp and dull, worsening, interfering with her sleep, and was worse with walking and better with rest and changing position. (Tr. 874).

On February 2, 2017, Plaintiff reported similar pain to Dr. Bushek. (Tr. 871). She underwent an MRI on February 21, 2017, which revealed moderate to severe facet degeneration and associated grade 1 anteriorlisthesis of L4, foraminal narrowing/deformity, and left paracentral disc protrusion at L4-5 and other mild degenerative changes. (Tr. 1025). Dr. Bushek noted in an October 20, 2017, exam that Plaintiff was morbidly obese and had diminished posterior tibialis pulses, which were compromised due to weight. (Tr. 998).

"In the face of the extensive records and specific diagnoses introduced by [Plaintiff], the ALJ's generalized comment that the treating physician'[s] opinion[] [was] not based on a solid clinical and diagnostic foundation, with no elaboration or detail, does not satisfy the procedural requirements for a treating physician's opinion[.]" *Sharp v. Barnhart*, 152 F. A'ppx. 503, 510 (6th Cir. 2005). Further, while she was not required to discuss each relevant factor, it is worth noting

11

that the ALJ "did not comment on the length of the treatment relationship between Dr. [Bushek] and the plaintiff, the frequency with which [Plaintiff] did or did not see [Dr. Bushek], the nature or extent of the relationship, or Dr. [Bushek's] specialty or lack of specialization." *Barger v. Berryhill*, No. 3:16-CV-01848, 2017 WL 3034687, at *5 (M.D. Tenn. July 18, 2017).

The ALJ's explanation with regard to Plaintiff's activities of daily living also falls short. The ALJ relied on the fact that, on May 22, 2018, Plaintiff reported she could complete walking, housework, shopping, and sleep up to six hours and reported up to fifty percent pain relief with medication. (Tr. 165). At that appointment, however, Plaintiff noted her exercise level as "none," and the "activities of daily living" consist of a single line noting "walking, housework, shopping, sleeping 0–6 hours." (Tr. 1038). Plaintiff was noted to have lumbar/lumbosacral spinespasms, tenderness on palpation, and reduced range of motion. (*Id*.). Similarly, the ALJ cites a May 23, 2018, form as evidence that she could independently complete activities of daily living. (Tr. 164). But that form simply contains a checkbox indicating that Plaintiff was "independent" as opposed to needing assistance with feeding, toileting, grooming, and dressing. (Tr. 1102).

And Plaintiff's testimony reflects that her activities of daily living do not necessarily support a finding that she can stand or walk without limitation. Plaintiff testified that she lives with her mother in a one-floor house. (Tr. 230). She and her mother tend to housework, though she has difficulty with these activities. (Tr. 231). For example, she has to rest and put her feet up after vacuuming. (*Id*.). She also testified that her pain was an eight on an average day even with medication and that moving around, walking, doing chores, or cooking aggravates her pain. (Tr. 237). She also testified that, when walking, the pain shoots down her leg to her ankle (Tr. 239) and that she is capable of standing for only five or ten minutes at a time (Tr. 241) and would have

12

to sit down for twenty minutes before standing again (*id*.). She said she can lift about ten pounds without "killing herself." (*Id*.). She is trying to exercise to lose weight but cannot walk for extended periods of time. (Tr. 259).

Neither the Commissioner nor the ALJ explain how being able to perform minimal housework and sleeping are inconsistent with Dr. Bushek's limitations. *See, e.g.*, *Dawes*, 2020 WL 587426, at *7 ("Neither the ALJ nor the commissioner has explained how these minimal activities [driving, preparing simple meals, housework with pain, and rest breaks] are inconsistent with [treating physician's] opinion that [plaintiff] cannot stand or walk for more than one hour each per workday."); *Jones v. Comm'r of Soc. Sec.*, No. 3:14-CV-131, 2015 WL 4540527, at *5 (S.D. Ohio May 26, 2015) (citations omitted). (remanding where ALJ "fail[ed] to explain how any reported daily activity conflicts with the limitations opined by [treating physicians]").

At base, while there may be evidence in the record upon which the ALJ could have relied in discounting the opinion of Dr. Bushek, the ALJ's explanation is not sufficiently specific to make clear to any subsequent reviewer the reason for discounting his opinion. *See Barger*, 2017 WL 3034687, at *5.

\* \* \*

Because the ALJ's analysis of Dr. Bushek's opinion supports remand, the Court need not address Plaintiff's remaining two arguments. On remand, the Commissioner may wish to address these arguments regarding the opinion of her other treating physician and her back pain.

## IV.   CONCLUSION

For the reasons stated, the Court **REVERSES** the Commissioner's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

13

IT IS SO ORDERED.

Date: January 29, 2021 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE